IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

AT HUNTINGTON

PAULETTA HOLT,

        Plaintiff,

V.                                    CIVIL ACTION NO. 3:05-0273

JOANNE BARNHART,
Commissioner of Social Security,

        Defendant.

**FINDINGS AND RECOMMENDATION**

In this action, filed under the provisions of 42 U.S.C. §405(g), plaintiff seeks review of the final decision of the Commissioner of Social Security denying her application for disability insurance benefits. The case is presently pending before the Court on cross-motions of the parties for judgment on the pleadings.

Plaintiff filed her application on March 11, 2002, alleging disability commencing August 26, 2001, as a consequence of osteoporosis, degenerative disc disease, osteoarthritis, Graves disease and back pain. On appeal from an initial and reconsidered denial, an administrative law judge, after hearing, found plaintiff not disabled in a decision which became the final decision of the Commissioner when the Appeals Council denied a request for review. Thereafter, plaintiff filed this action seeking review of the Commissioner's decision.

At the time of the administrative decision, plaintiff was forty-six years of age and had obtained a tenth grade education. Her past relevant employment experience consisted of work as

a deputy jailer. In his decision, the administrative law judge found that plaintiff suffered from "depression, degenerative disc disease of the lumbar spine and status post anterior cervical diskectomy with fusion," impairments which he considered severe. Though concluding that plaintiff was unable to perform her past work,[1] the administrative law judge determined that she had the residual functional capacity for a limited range of light level work. On the basis of this finding, and relying on Rule 202.18 of the medical-vocational guidelines[2] and the testimony of a vocational expert, he found plaintiff not disabled.

      The evidence in this case is conflicting. According to Dr. Greg Wheeler, plaintiff's treating neurosurgeon, she suffers from chronic cervical strain and sprain with permanent nerve root injury syndrome and cervicalgia, lumbar strain and sprain and anxiety. A consultative psychological evaluator also diagnosed major depression, recurrent, mild. On November 2, 1999, Dr. Wheeler performed surgery on plaintiff's neck consisting of an anterior diskectomy and fusion from C4 through C7. The fusion had to be redone on January 19, 2000, due to the plate and screws slipping out of place. Subsequent reports reflect that the fusion healed somewhat slowly. As the administrative law judge observed, an October 2000 X-ray showed a change in the position of the screws at the C4 level with facet arthritis from C3 to C7.

      Plaintiff was involved in a motor vehicle accident on September 1, 2001, resulting in the development of lower back pain. Dr. Richard Lingreen, an associate of Dr. Wheeler, provided pain management treatment for this problem as well as for continuing neck and mid-back pain. This

---

[1] This finding had the effect of shifting a burden of production to the Commissioner with respect to other work plaintiff was capable of performing. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981); McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

[2] 20 C.F.R. Part 404, Subpart P, Appendix 2, Table No. 2.

treatment included prescription of strong pain medication, such as Oxycontin,[3] which did not relieve plaintiff's symptoms, and Methadone[4] which she began in March of 2002. This medication was noted to stabilize her pain and allow her to function at a higher level. An epidural steroid injection into the cervical spine done November 5, 2002, provided additional benefit.

An MRI of the cervical spine performed December 5, 2002, was interpreted by Dr. Lingreen as showing a small herniated nucleus pulposus at C3-4 and herniations at the L4-5 and L5-S1 levels in the lumbar spine. On February 11, 2003, Dr. Lingreen noted complaints of increased neck, mid-back and right arm pain and concluded plaintiff's pain was not being treated successfully with the analgesic medications prescribed.

The objective test results and treatment administered suggest plaintiff suffers from conditions capable of causing significant pain and it would appear her doctors believe this too. The administrative law judge concluded that plaintiff's testimony as to her limitations and pain was not credible, citing the activities in which she engages. These include going to Lexington, Kentucky for appointments with her doctors every two months, sometimes driving herself; shopping at the mall, including trying on clothes, for about two hours at a time; grocery shopping with her sister, with whom she is staying; going to the library; visiting her mother; using a tanning bed one to two times a week, fifteen minutes at a time; performing light housework such as dusting, light cooking, laundry and dishes; and, reading and watching television. The administrative law judge viewed

---

[3] This medication is indicated for the management of moderate to severe pain when a continuous, around-the-clock analgesic is needed for an extended period of time. Physician's Desk Reference 2701 (60th Ed. 2006).

[4] This medication is a narcotic analgesic indicated for the relief of severe pain. Attorney's Dictionary of Medicine M-171 (2006).

plaintiff's ability to perform these activities as conclusive evidence that she was not disabled, despite the seriousness of her impairments as indicated by the objective test results, diagnoses and treatment regimen.

The Court recognizes that the resolution of conflicts in the evidence is a function of the Commissioner, not the courts, Thomas v. Celebrezze, 331 F.2d 541 (4th Cir. 1974), and if the Commissioner's findings are supported by substantial evidence this Court is bound to uphold the decision. Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). In this case, however, the Court is of the view that the findings lack substantial support and further development of the record will be required.

Review of the record, reveals that, while there are a number of reports from the treating physicians, they contain almost no findings regarding range of motion, the presence of tenderness and/or muscle spasm, neurological status or results of tests conducted during exams, such as straight leg raising, information that can be helpful in establishing the effect a condition has on a patient. There is no indication the administrative law judge attempted to contact Dr. Wheeler or Dr. Lingreen to see if they could provide any of this information or, at the very least, comments or opinions as to what work-related limitations exist based on their contact with plaintiff. The administrative law judge instead sought guidance from opinions of state agency medical advisors and made their assessments the basis for his finding that plaintiff had the ability to perform light level work without restriction on sitting, standing, walking or pushing/pulling. It is observed that the more recent of these assessments was completed on September 24, 2002, prior to the most recent MRI from December 2002, which showed disc herniation at three levels of the spine. The Court concludes that additional evidence as to plaintiff's ability to function in light of her seemingly

significant medical problems is essential to a determination of her residual functional capacity. While plaintiff has a duty to submit evidence establishing disability,[5] the administrative law judge has a duty to "explore all relevant facts and inquire into the issues necessary for adequate development of the record, and cannot rely only on the evidence submitted by the claimant when that evidence is inadequate." Cook v. Heckler, 783 F.2d 1168, 1173 (4th Cir. 1986).

Another area that was insufficiently developed and considered relates to plaintiff's medication and side effects from it. As noted, methadone, used for treatment of severe pain, is obviously a strong medication. Plaintiff testified that, while it lessens her pain to some degree, it also makes her very drowsy and she takes a two to three hour nap in the mornings after sleeping eight to ten hours at night.[6] While plaintiff's treating physicians do not address this issue in their reports, it is noted that Dr. Woolley, the consultative psychological evaluator, observed that plaintiff's thought processes were somewhat slow. He did not offer an opinion as to cause, but it would appear medication could be a factor. The regulations indicate that, inter alia, the "type, dosage, effectiveness and side effects of any medication" a claimant is taking will be considered in assessing symptom severity.[7] The administrative law judge's order does not suggest he gave much consideration to the implications of plaintiff's use of methadone, particularly with regard to her level of pain as well as possible side effects. This information could, at least to some degree, also be provided by treating physicians. In light of these deficiencies, the Court concludes that remand is

---

[5] See, 20 C.F.R. §404.1512.

[6] Plaintiff submitted to the Appeals Council an exhibit showing the side effects of this medication. Drowsiness was listed as the most common effect. See, Ex. AC-1.

[7] 20 C.F.R. §404.1529(c)(3)(iv).

necessary to obtain more information about plaintiff's impairments and treatment and the effect of these factors upon her ability to work.

## RECOMMENDATION

In light of the foregoing, it is **RESPECTFULLY RECOMMENDED** that this case be remanded to the Commissioner for further proceedings consistent with these Findings and Recommendation.

Plaintiff and defendant are hereby notified that a copy of these Findings and Recommendation will be submitted to the Honorable Joseph R. Goodwin, United States District Judge, and that, in accordance with the provisions of Rule 72(b), Fed.R.Civ.P., the parties may, within thirteen days of the date of filing these Findings and Recommendation, serve and file written objections with the Clerk of this Court, identifying the portions of the Findings and Recommendation to which objection is made and the basis for such objection. The judge will make a de novo determination of those portions of the Findings and Recommendation to which objection is made in accordance with the provisions of 28 U.S.C. §636(b) and the parties are advised that failure to file timely objections will result in a waiver of their right to appeal from a judgment of the district court based on such Findings and Recommendation. Copies of objections shall be served on all parties with copies of the same to Judge Goodwin and this Magistrate Judge.

The Clerk is directed to file these Findings and Recommendation and to transmit a copy of the same to all counsel of record.

DATED: November 20, 2006

_____
MAURICE G. TAYLOR, JR.
UNITED STATES MAGISTRATE JUDGE